1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EDDIE FELIX,                              No.  2:18-cv-3185 DJC AC

12                  Plaintiff,

13         v.                                  ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14   JONH CASEY, et al.,

15                  Defendants.

16

17         Plaintiff is a California state prisoner proceeding in pro se with a civil rights action

18   brought under 42 U.S.C. § 1983.  Four motions are before the court: defendant Sam Wong's

19   motion for summary judgment (ECF No. 37); defendant John Casey's motion for summary

20   judgment (ECF No. 40); plaintiff's "motion for summary judgment" (ECF No. 41); and plaintiff's

21   subsequent "motion for summary judgment and for sanctions" (ECF No. 50).

22         I.      BACKGROUND

23         On screening of the Second Amended Complaint (ECF No. 11), the undersigned found

24   that plaintiff had stated Eighth Amendment claims for deliberate indifference to serious medical

25   needs against defendants John Casey, M.D., a surgeon at San Joaquin General Hospital, and Sam

26   Wong, M.D., plaintiff's primary care provider at Mule Creek State Prison.  ECF No. 14.

27         The SAC alleged in sum that plaintiff had experienced problems with his left knee for

28   over 25 years after he was injured in a riot at Pelican Bay State Prison.  In May 2017, while

                                              1

housed at Mule Creek State Prison, plaintiff received knee surgery from Dr. Casey at San Joaquin

General Hospital.  Plaintiff subsequently experienced pain and swelling, and later learned that the

wrong knee replacement devices and the wrong size devices had been implanted into his knee.

Dr. Casey and Dr. Wong both discounted plaintiff's complaints of severe post-operative pain until

plaintiff was belatedly diagnosed with a bone infection that required a second surgery.  That

surgery, which was performed in April 2018 by Dr. Casey, was necessitated by the inadequacy of

the first surgery.  A third surgery was performed later in 2018 to replace the improperly installed

prosthetics.  Both defendants allegedly failed to provide proper postoperative care throughout the

relevant period, resulting in infection, delayed corrective surgery and unnecessary pain, and

causing permanent damage to plaintiff's leg.

II.    PLAINTIFF'S MOTIONS (ECF Nos. 41, 50)

Although these motions are titled motions for summary judgment, they are not brought

under Fed. R. Civ. P. 56 and they make no reference to the summary judgment standards that

plaintiff was informed of in the Rand notices provided with defendants' motions.[1]  Plaintiff does

not provide any statement of undisputed facts, nor does he cite and discuss evidence that he

believes establishes defendants' liability as a matter of law.  Rather, both motions simply demand

judgment in plaintiff's favor as a remedy for alleged bad faith litigation tactics by defendants.

The motion at ECF No. 41 alleges discovery violations, and it largely reprises the

arguments plaintiff made in his unsuccessful challenge to defendant Caseys' interrogatory

responses.  See ECF No. 38 (motion to reject discovery responses).  In light of its contents, this

motion will be construed as a motion for reconsideration of the order at ECF No. 39, which

denied the discovery challenge.  As such, the motion at ECF No. 41 will be denied.  Plaintiff has

merely repeated arguments previously rejected by the court and/or offered arguments that could

have been made at that time, and he thus offers no cognizable basis for reconsideration.  See

Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009)

(reconsideration of prior order appropriate only if court is presented with newly discovered

---

[1]  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998); see also ECF No. 37-9 (Rand notice served by defendant Wong), ECF No. 40-5 (Rand notice served by defendant Casey).

1    evidence, has committed clear error, or there has been an intervening change in the controlling

2    law); United States v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) (party

3    seeking reconsideration must do more than disagree with the court's decision or recapitulate that

4    which the court has previously considered).

5         The motion at ECF No. 50 objects to defendant Wong's filing at ECF No. 47, which noted

6    plaintiff's failure to have timely opposed Wong's motion for summary judgment.  Plaintiff argues

7    that this notice was filed in bad faith, because plaintiff has filed numerous documents insisting

8    that he is the one entitled to summary judgment.  ECF No. 50.  To the extent this motion may be

9    construed as a motion to strike ECF No. 47, it will be denied.  There is nothing improper in

10   defendant Wong's notice, which accurately stated that plaintiff had not filed a statement of

11   opposition that conforms to Rule 56, the local rules of this court, and the requirements explained

12   in the Rand notice.  To the extent the motion at ECF No. 50 constitutes a bare statement of

13   opposition to the Wong motion for summary judgment (ECF No. 37), that position is noted.

14   III.    LEGAL STANDARDS APPLICABLE TO DEFENDANTS' MOTIONS

15       A.    Summary Judgment Under Rule 56

16        Summary judgment is appropriate when the moving party "shows that there is no genuine

17   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

18   Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

19   of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

20   F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

21   moving party may accomplish this by "citing to particular parts of materials in the record,

22   including depositions, documents, electronically stored information, affidavits or declarations,

23   stipulations (including those made for purposes of the motion only), admissions, interrogatory

24   answers, or other materials" or by showing that such materials "do not establish the absence or

25   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

26   support the fact."  Fed. R. Civ. P. 56(c)(1).

27        "Where the non-moving party bears the burden of proof at trial, the moving party need

28   only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

1   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

2   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

3   motion, against a party who fails to make a showing sufficient to establish the existence of an

4   element essential to that party's case, and on which that party will bear the burden of proof at

5   trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

6   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

7   a circumstance, summary judgment should "be granted so long as whatever is before the district

8   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

9   56(c), is satisfied." Id.

10        If the moving party meets its initial responsibility, the burden then shifts to the opposing

11   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

12   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

13   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

14   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

15   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

16   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

17   fact "that might affect the outcome of the suit under the governing law," and that the dispute is

18   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

19   party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

20        In the endeavor to establish the existence of a factual dispute, the opposing party need not

21   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

22   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

23   trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

24   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

25   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

26   whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

27   quotation marks omitted).

28        "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

4

1   court] draw[s] all inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>

2   <u>v. Cent. Contra Costa Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

3   opposing party's obligation to produce a factual predicate from which the inference may be

4   drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

5   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

6   some metaphysical doubt as to the material facts."  <u>Matsushita</u>, 475 U.S. at 586 (citations

7   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

8   non-moving party, there is no 'genuine issue for trial.'"  <u>Id.</u> at 587 (quoting <u>First Nat'l Bank</u>, 391

9   U.S. at 289).

10          B.  <u>Eighth Amendment</u>

11          In order to state a § 1983 claim for violation of the Eighth Amendment based on

12   inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to

13   evidence deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106

14   (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and

15   that defendants possessed a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294,

16   299 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand).  A serious

17   medical need exists if the failure to treat a prisoner's condition could result in further significant

18   injury or the unnecessary and wanton infliction of pain.  <u>See</u> <u>Wood v. Housewright</u>, 900 F. 2d

19   1332, 1337-41 (9th Cir. 1990).  The requisite state of mind is "deliberate indifference."  <u>Hudson</u>

20   <u>v. McMillian</u>, 503 U.S. 1, 4 (1992).

21          In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court established a very strict

22   standard which a plaintiff must meet in order to establish "deliberate indifference."  Negligence is

23   insufficient.  <u>Farmer</u>, 511 U.S. at 835.  Even civil recklessness (failure to act in the face of an

24   unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  <u>Id.</u> at

25   836-37.  Neither is it sufficient that a reasonable person would have known of the risk or that a

26   defendant should have known of the risk.  <u>Id.</u> at 842.  A prison official acts with deliberate

27   indifference only if he subjectively knows of and disregards an excessive risk to inmate health

28   and safety.  <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004).

1   A difference of opinion between an inmate and prison medical personnel—or between

2   medical professionals—regarding the appropriate course of treatment does not by itself amount to

3   deliberate indifference to serious medical needs.  Toguchi, 391 F.3d at 1058; Sanchez v. Vild,

4   891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of opinion rises to the level

5   of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was

6   medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an

7   excessive risk to [the prisoner's] health.'"  Toguchi, 391 F.3d at 1058 (alteration in original)

8   (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

9   IV.   DR. CASEY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 40)

10      A.   Overview

11      Dr. Casey seeks summary judgment on the primary grounds that he provided appropriate

12   medical care to plaintiff at all times, that there is no evidence that plaintiff received the wrong

13   knee implant device and/or the wrong size device, there is no evidence that plaintiff faced any

14   serious risk to his future health or that defendant disregarded such a risk, and there is no evidence

15   to support causation.  ECF No. 40-1 (Memorandum of Points and Authorities).[2]  The motion is

16   supported by the required Separate Statement of Undisputed Facts, ECF No. 40-2; a detailed

17   expert witness declaration, ECF No. 40-3; and exhibits including medical records, deposition

18   excerpts, and discovery responses, ECF No. 40-4.

19      Plaintiff's opposition to the motion, ECF No. 43, completely fails to comply with the

20   requirements of Federal Rule 56(c)(1)(A) and Local Rule 260(b)[3] despite the provision of notice

21   to plaintiff of these requirements.  See ECF Nos. 37-9, 40-5 (Rand notices).  The failure is not

---

[2]  Defendant also points to plaintiff's failure to comply with his discovery obligations generally, and specifically plaintiff's failure to comply with a court order compelling further responses to defendant's discovery requests.  Dr. Casey seeks dismissal as a discovery sanction.  ECF No. 40-1 at 22-23.  The undersigned finds it more appropriate to address the motion as to the merits of the claims.

[3]  Federal Rule of Civil Procedure 56(c)(1)(A) requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Local Rule 260(b) provides that plaintiff must file a separate document in response to defendants' statement of undisputed facts that identifies which facts are admitted and which are disputed.

merely technical.  Plaintiff did not simply fail to file a separate document responding to defendant's statement of undisputed facts, or fail to admit or deny on a fact-by-fact basis.  His filing does not respond to the substance of defendant's facts at all, let alone with citations to evidence, nor does it substantively address the merits of plaintiff's claims.  Instead of attempting to meet his burden, plaintiff repeats his previously rejected arguments regarding discovery and accuses defendant of bad faith for moving for summary judgment after plaintiff had demanded judgment in his own favor on grounds of discovery abuse.  This is not the opposition contemplated by Rule 56(c)(1)(A), and plaintiff has presented no legal reason why Dr. Casey's motion for summary judgment should not be adjudicated on its merits.

B.  <u>Undisputed Facts</u>

Because plaintiff has failed to identify evidence creating a triable dispute as to any of defendant's material facts, the court adopts all facts contained in defendant's statement at ECF No. 40-2 as undisputed for purposes of summary judgment.

After suffering an injury to his knee in 1991 during a prison riot, plaintiff underwent bilateral knee arthroscopies, corticosteroid injections, physical therapy, and oral anti-inflammatory treatment, but continued to experience chronic pain.  DUF ¶ 4.  On February 28, 2017, plaintiff was seen at San Joaquin General Hospital by Dr. Casey, who noted plaintiff had end-stage osteoarthritis, tricompartmental, and was unable to ambulate more than 10 steps without significant pain.  After consultation, plaintiff elected to undergo a total left knee replacement.  DUF ¶ 8.

Dr. Casey performed the surgery on May 22, 2017.  DUF ¶ 11.  Post-operative X-ray imaging showed "Total LEFT knee arthroplasty without fracture or hardware complication." DUF ¶ 13.  The wound was treated with antiseptic prior to closure, and plaintiff was prescribed antibiotics afterward.  DUF ¶¶ 12, 14.  Defendant's retained expert, Harry Khasigian, M.D., declares following comprehensive review of the medical records that Dr. Casey performed the surgery appropriately and used the correct hardware.  DUF ¶¶ 39, 41-42.[4]

---

[4]  The only response plaintiff makes to defendant's facts is an objection that Dr. Khasigian's declaration (ECF No. 40-3) is not admissible because not made under oath, because the (cont.)

1    Dr. Casey saw plaintiff for a post-operative visit on or about June 13, 2017, and

2    prescribed Norco for pain.  The repaired knee was noted to be "well-aligned," and the incision

3    was "clean, dry, and intact" without oozing or weeping.  DUF ¶ 15.  An X-ray on July 13, 2017,

4    showed no abnormalities.  DUF ¶ 16.  At a follow-up appointment on August 8, 2017, plaintiff

5    complained of pain and tenderness and X-rays were reviewed showing "stable orthopedic

6    hardware in good location."  SUF ¶ 17.  At a follow-up visit on October 17, 2017, Dr. Casey

7    noted plaintiff's continued discomfort, which was considered to be normal, and on examination

8    found the incision to be healed and concluded that imaging showed "a well-fixed, well-aligned

9    total knee arthroplasty."  DUF ¶ 18.  Dr. Casey restored gabapentin to plaintiff's pain regimen at

10   plaintiff's request, and recommended physical therapy.  DUF ¶ 19.  Dr. Khasigian concludes that

11   all follow-up care was medically appropriate.  DUF ¶¶ 40, 43-44.

12   On February 27, 2018, Dr. Casey saw plaintiff for complaints of left knee pain and

13   identified effusion (fluid accumulation) in the knee.  DUF ¶¶ 20-21.  Dr. Casey ordered an

14   aspiration of the knee and a workup for complications including possible infection.  The cultures

15   of aspirated fluid came back negative.  DUF ¶¶ 22-23.  Dr. Khasigian opines that defendant was

16   well within the standard of care in his response on February 27, 2018.  DUF ¶ 45.  On March 13,

17   2018, plaintiff was seen in the emergency department of SJGH.  Records of that visit indicate

18   there were no signs of infection.  An X-ray taken that day showed no abnormalities, and the

19   radiologist noted "no evidence of loosening."  DUF ¶¶ 24-25.

20   A bone scan previously ordered by Dr. Casey on February 27 was completed on March

21   30, and reflected a diffuse abnormality of radiotracer activity, which could indicate infection.

22   DUF ¶¶ 22, 26.  Dr. Casey saw plaintiff on April 10, 2018, assessed an infection of the prosthetic

23   left knee joint, and scheduled plaintiff for surgery for "possible explant with revision using

24   antibiotic implants."  DUF ¶ 27.  On April 16, Dr. Casey performed an explant of plaintiff's

25   _____

26   declarant does not provide a medical license number, and because it contains hearsay  ECF No.
     43 at 3.  The declaration is signed under penalty of perjury, and it contains sufficient facts to
27   qualify Dr. Khasigian as an expert witness.  The proffered opinions are each supported by a
     detailed factual basis admissible for that purpose in the context of expert opinion testimony.
28   Plaintiff's additional evidentiary objections to the declaration are meritless.  All are overruled.

8

1   infected knee replacement and its temporary replacement with an "antibiotic spacer."  DUF ¶ 28;

2   Khasigian Decl. (ECF No. 4-3) at 14, ¶ 18.  There were no surgical complications.  DUF ¶ 28.

3   Plaintiff had a PICC line inserted and began receiving IV antibiotics.  Cultures from the surgery

4   were positive for staph lugdunensis.  Id.  Dr. Khasigian declares that Dr. Casey was well within

5   the standard of care as it pertains to timing between first clinical indications of an infection, his

6   decisions to work plaintiff up for infection and loosening, and scheduling plaintiff for removal of

7   the total knee implant on April 16, 2018.  DUF ¶ 46.  The only way to treat a total knee

8   replacement implant infection is with removal of the left total knee device and IV antibiotics,

9   DUF ¶ 47, and it is crucial to ensure the original infection is gone before proceeding to implant a

10  new replacement, Khasigian Decl. (ECF No. 4-3) at 14, ¶ 18.

11      At a follow up appointment on May 8, 2018, Dr. Casey noted a well healed incision,

12  minimal swelling, and no redness.  He continued plaintiff on IV antibiotics, to be followed by a

13  course of oral antibiotics and bloodwork to check for infection prior to the next follow up visit.

14  DUF ¶ 29.  At a follow-up appointment on July 10, 2018, Dr. Casey noted continued healing and

15  confirmed the antibiotic protocol.  DUF ¶ 30.  Dr. Khasigian declares that Dr. Casey's actions

16  during this period were medically appropriate and timely regarding antibiotics, monitoring for

17  infection, and pain control.  DUF ¶¶ 48-49.

18      On September 18, 2018, plaintiff saw Dr. Casey after having completed his antibiotic

19  therapy.  His labs were within normal limits.  Plaintiff wished to proceed with a revision total

20  knee replacement, and Dr. Casey indicated the patient was ready for that procedure.  DUF ¶ 31.

21  Per Dr. Khasigian, defendant acted correctly in ensuring that plaintiff's site infection had

22  completely cleared before proceeding with the total knee replacement.  DUF ¶ 49.  The surgery

23  went forward without complication on October 29, 2018.  DUF ¶ 32.  Cultures from the surgery

24  came back negative, confirming that there was no infection at the site.  Plaintiff was provided

25  Norco for pain.  Id.  Dr. Khasigian opines that Dr. Casey's protocol during the October 29, 2018,

26  surgery was well within the standard of care, including timing, device sizing and alignment,

27  antibiotic administration prior to and following the procedure, pain medication administered, as

28  well as post-procedure follow up care.  DUF ¶ 50.  The device implanted on October 29, 2018,

was larger than the one that had been implanted in May 2017, which is standard for a revision and is medically necessary due to the additional bone removal that is required for a revision implant; it does not indicate that either device was the wrong size.  Khasigian Decl. (ECF No. 40-3) at 11-12, ¶ 13.

Plaintiff saw Dr. Casey for follow-up visits regarding his left knee on November 13, 2018; January 15, 2019; April 19, 2019; July 16, 2019; and October 22, 2019.  No infection, other post-surgical complication, or potential problems with the prosthetic were identified at any of these visits.  DUF ¶¶ 33-37.

Dr. Khasigian opines overall that there was no negligent act or omission on the part of Dr. Casey following the initial surgery or thereafter that caused or contributed to the injuries and complications alleged by plaintiff, including the infection that developed in the original implant, the need for revision, and plaintiff's pain.  Infection of a total knee replacement is an uncommon but known risk that can, and did in this case, occur in the absence of negligence.  Dr. Casey gave plaintiff medically appropriate antibiotic treatment prior to, during and after the May 22, 2017, surgery.  Plaintiff was provided appropriate post-operative care and monitored appropriately.  All three surgical procedures and all post-surgical management fell well within the standard of care, including as to pain management.  The medical records document and confirm that all of plaintiff's medical needs were appropriately addressed and treated throughout the relevant period. DUF ¶¶ 51-52.

C.  Analysis

On these facts, no reasonable jury could find that Dr. Casey caused any of plaintiff's alleged injuries or that he acted with deliberate indifference to plaintiff's serious medical needs. Plaintiff has identified no evidence to support his allegation—assumed to be true at the pleading stage, but no longer—that Dr. Casey used hardware during the first surgery that was the wrong type or size.  Plaintiff's own lay "opinion" is not admissible on this point, and his allegations about the medical devices are both speculative and so inconsistent with the medical record that no jury could accept them.  See Scott v. Harris, 550 U.S. 372, 380 (2007) (when one party's version

////

10

1    of events is blatantly contradicted by the record, so that no reasonable jury could believe it, it may

2    be disregarded on summary judgment).

3         The undisputed facts demonstrate that the May 2017 surgery was performed well within

4    the standard of care, and that plaintiff's subsequent pain and the infection he developed were

5    unfortunate complications of the surgery which were not caused by any act or omission of Dr.

6    Casey.  The evidence shows that Dr. Casey treated plaintiff's pain and the infection appropriately,

7    and that the subsequent interim removal of the infected device and later revision of the knee

8    replacement were medically appropriate responses.  Undergoing a total of three surgeries to

9    achieve a successful knee replacement is undoubtedly a terrible experience, but the evidence does

10   not support a finding of any substandard care provided by Dr. Casey in response to plaintiff's

11   evolving condition.

12        Even if plaintiff could point to evidence of medical error, the record utterly fails to

13   support an inference that Dr. Casey acted at any time with the culpable state of mind required for

14   an Eighth Amendment violation.  See Toguchi, 391 F.3d at 1057.  Plaintiff's disagreement with

15   defendant about the treatment he should have received for pain, infection, or any other medical

16   need related to his knee, is insufficient to create a jury question because such a disagreement does

17   not support Eighth Amendment liability as a matter of law.  See Jackson v. McIntosh, 90 F.3d

18   330, 332 (9th Cir. 1996).  Because the record taken as a whole could not lead a rational trier of

19   fact to find for plaintiff, there is no genuine issue for trial.  See Matsushita, 475 U.S. at 587.  Dr.

20   Casey is therefore entitled to summary judgment.

21        V.    DR. WONG'S MOTION FOR SUMMARY JUDGMENT (ECF No. 37)

22             A. Overview

23        Dr. Wong seeks summary judgment on the grounds that (1) the undisputed evidence

24   shows he was responsive to plaintiff's medical condition and did not disregard any excessive risk

25   to plaintiff's health, and (2) he is entitled to qualified immunity.  ECF No. 37-1 (Memorandum of

26   Points and Authorities).  The motion is supported by the required Separate Statement of

27   Undisputed Facts, ECF No. 37-2, and various declarations and exhibits, ECF Nos. 37-3 through

28   37-8.

As noted above, plaintiff has expressed his position that he and not Dr. Wong is the party entitled to summary judgment, ECF No. 50, and the court notes his opposition to the motion. Plaintiff has not responded to defendant's Statement of Undisputed Facts, either in a separate statement or on a fact-by-fact basis, and he has not briefed the substance of Dr. Wong's arguments regarding the merits of plaintiff's claims despite being provided notice of the requirements for opposing a summary judgment motion.

B. Undisputed Facts

Because plaintiff has failed to identify evidence creating a triable dispute as to any of defendant's material facts, the court adopts all facts contained in defendant's statement at ECF No. 37-2 as undisputed for purposes of summary judgment.

Dr. Wong was one of plaintiff's physicians at MCSP from May 25, 2017, to July 18, 2018.  DUF ¶ 4.  On May 25, 2017, following the first surgery described in the previous section, plaintiff returned to MCSP from SJGH.  From May 25 to May 27, and again from June 1 to June 27, 2017, Dr. Wong ordered health care lay-in chronologies, placing plaintiff on bed rest so he could recover from the surgery.  DUF ¶ 9.

At a post-operative follow up visit on June 1, 2017, plaintiff requested morphine for pain but Dr. Wong prescribed Tylenol #3 instead because plaintiff had been previously caught "cheeking" morphine (i.e., concealing the medication in the mouth instead of swallowing it). DUF ¶ 10.  Dr. Wong also checked plaintiff's incision and provided wound care instructions. DUF ¶ 11-12.  On June 7, 2017, plaintiff against requested morphine and Dr. Wong again prescribed Tylenol #3.  DUF ¶ 13.  There were no signs of infection, and Dr. Wong arranged for the wound to be dressed three times a week for two weeks.  DUF ¶ 16.  On June 12, Dr. Wong ordered a follow up visit for plaintiff with Dr. Casey the next day.  DUF ¶ 17.

On July 8, 2017, plaintiff complained of persistent left knee pain and Dr. Wong ordered X-rays on July 11, 2017.  DUF ¶ 23.  The X-rays taken on July 13, 2017 did not show any evidence of hardware loosening or failure.  DUF ¶ 24.  On August 5, 2017, plaintiff submitted a Health Care Request Form, requesting a Norco prescription for his knee pain.  In response, Dr. Wong prescribed methadone for pain management and noted on August 6, 2017, that plaintiff

12

refused this prescription.  DUF ¶ 25.  Plaintiff saw Dr. Casey in mid-October, and on October 31

Dr. Wong followed up regarding plaintiff's knee.  Plaintiff stated he had some pain but was able

to exercise.  Dr. Wong noted that plaintiff had a follow-up visit with his orthopedic surgeon in

two to three months.  DUF ¶¶ 27-28.

On January 2, 2018, Dr. Wong reported that plaintiff refused his medical appointment

because he did not receive gabapentin.  In his progress notes, Dr. Wong reported that he did not

provide gabapentin because it was not medically indicated for pain medication, and prescribed

celocoxib for pain instead.  DUF ¶ 29.  Dr. Wong also reported that he scheduled a thirty-day

follow-up with plaintiff.  DUF ¶ 30.  On January 4, 2018, Dr. Wong ordered physical therapy two

to three times per month for a total of twelve visits.  DUF ¶ 31.  On the same date, to address

plaintiff's concerns about pain and swelling in his left knee, Dr. Wong ordered X-rays which

were taken on January 18, 2018.  DUF ¶ 32.

On January 18, 2018, Dr. Wong saw plaintiff and reviewed the October 17, 2017 and

January 18, 2018 X-rays, which suggested hardware loosening.  In response, Dr. Wong ordered a

follow-up appointment with plaintiff's orthopedic specialist.  DUF ¶ 33.  Despite plaintiff's

complaints, Dr. Wong observed a well-healed surgical scar incision, no swelling, and a full range

of motion of his left knee.  DUF ¶ 34.  Dr. Wong informed plaintiff that his request for

gabapentin was denied since it was not FDA approved for pain medication at that time.  Plaintiff

indicated willingness to use celecoxib, which he was previously prescribed, in addition to

capsaicin cream for pain medication.  DUF ¶ 35.

On February 14, 2018, Dr. Wong reported that plaintiff no longer needed a walker and

was fully ambulatory.  DUF ¶ 37.

On March 12, 2018, Dr. Wong followed up with plaintiff regarding Dr. Casey's February

27, 2018, consultation.  DUF ¶ 39.  Consistent with Dr. Casey's plan, Dr. Wong ordered a bone

scan and laboratory blood work-up to address concern for loosening of hardware and/or infection

of the left knee.  DUF ¶ 40.  Dr. Wong also expedited a follow-up with the orthopedic specialist

in thirty days or sooner, and instructed plaintiff to continue current medication of celocoxib 100

mg twice per day for pain.  DUF ¶ 41.  The next day, on March 13, 2018, after reviewing

13

1    plaintiff's lab work, Dr. Wong requested that plaintiff be transferred to SJGH as an emergency to

2    rule out infection.  DUF ¶ 42.  At the SJGH ER on March 13, 2013, plaintiff underwent

3    diagnostic X-rays of his left knee which revealed no acute findings or evidence of infection.  DUF

4    ¶¶ 42, 45.  On March 30, 2018, plaintiff underwent a bone scan.  DUF ¶ 43.

5           At an April 3, 2018, follow-up appointment, Dr. Wong reviewed the March 13 X-rays,

6    which showed no acute findings.  DUF ¶¶ 44-45.  Dr. Wong noted that plaintiff was going to

7    physical therapy and that plaintiff felt improved but still had persistent pain which was alleviated

8    with Celebrex, which Dr. Wong increased to 200 mg twice per day for pain management.  DUF ¶

9    46.

10          On April 10, 2018, Dr. Casey reviewed Felix's bone scan results, which suggested

11    infection.  DUF ¶ 47.  On April 12, 2018, Dr. Wong followed up with plaintiff regarding the

12    recommendation for a second surgery and possible total knee replacement; Dr. Wong advised

13    plaintiff of all the risks and benefits of the surgery and noted that plaintiff agreed to the surgery.

14    DUF ¶¶ 48-49.  Dr. Wong advised plaintiff that he could use morphine 50 mg twice per day for

15    pre- and post-operative pain management, to be tapered off post-operatively.  DUF ¶ 50.  After

16    plaintiff's April 16, 2018 surgery (removing the infected implant and placing an antibiotic

17    spacer), he was transferred to SVSP where he received six weeks of intravenous antibiotic

18    treatment; he returned to Mule Creek on June 1, 2018.  DUF ¶¶ 51-53.

19          Dr. Wong saw plaintiff on June 7, 2018.  DUF ¶ 54.  He reported that plaintiff was able to

20    accomplish activities of daily living independently, and was ambulating with a four-wheeled

21    walker.  DUF ¶ 55.  Dr. Wong noted that plaintiff's pain was under control, and that he was

22    taking gabapentin and morphine as well Tylenol and Celebrex for pain.  DUF ¶ 56.  Dr. Wong

23    further reported that plaintiff continued to take the antibiotic Bactrim DS twice per day for three

24    months' time to prevent infection.  DUF ¶ 57.  Dr. Wong also ordered orthopedic follow-up,

25    baseline lab work-up, X-rays, recommended plaintiff to continue pain management medication,

26    and to continue oral antibiotics as directed by Dr. Casey.  DUF ¶ 58.  On July 9, 2018, Dr. Wong

27    ordered for plaintiff to be seen by Dr. Casey and ordered full blood work up to monitor for

28    infection.  DUF ¶ 59.  Dr. Wong last treated Felix on July 18, 2018.  DUF ¶ 60.

1    David M. Mathis, M.D., in his capacity as a medical consultant in the Office of Legal

2    Affairs of the California Correctional Health Care Services ("CCHCS"), has reviewed the entire

3    medical record and offers the expert opinion that all care provided to plaintiff by Dr. Wong was

4    within CDCR's Standard of Care and was consistent with the degree of knowledge and skill

5    ordinarily possessed and exercised by members of my profession under similar circumstances.

6    Mathis Decl. (ECF No. 37-5) at 10-11.

7        C.  Analysis

8        On this record, plaintiff cannot establish that Dr. Wong acted with deliberate indifference

9    to his needs.  The undisputed evidence shows that Dr. Wong was responsive to plaintiff's

10   complaints, and that he acted with due care in response to plaintiff's pre-operative and post-

11   operative needs including pain and the possibility of infection.  Plaintiff's own disagreement with

12   aspects of Dr. Wong's care cannot support a finding of deliberate indifference, and plaintiff has

13   not responded to the motion with admissible evidence showing that Dr. Wong did anything

14   medically unacceptable during the relevant period.  See Jackson, 90 F.3d at 332.  Plaintiff has not

15   identified evidence sufficient to support an inference that Dr. Wong was at any time subjectively

16   aware of an excessive risk to plaintiff's health which he deliberately disregarded.  See Toguchi,

17   391 F.3d at 1057.  Because plaintiff has failed to come forward with admissible evidence to

18   support an essential element of his claim for relief, summary judgment is appropriate.  See

19   Celotex, 477 U.S. at 325.

20       Because defendant is entitled to summary judgment on the merits of the constitutional

21   claim, the court need not reach the issue of qualified immunity.

22   VI.    SUMMARY FOR PRO SE PLAINTIFF

23       The magistrate judge recommends that summary judgment be entered for both defendants,

24   because the evidence does not support a conclusion that either of them was deliberately

25   indifferent to your needs.  There is no evidence that the wrong devices were implanted during

26   your first surgery, or that the subsequent infection was caused by anything that Dr. Casey or Dr.

27   Wong did or didn't do.  Your disagreement with your pain medications and follow-up care is not

28   enough to create a jury question about deliberate indifference.

15

1   CONCLUSION

2        For the reasons explained above, it is HEREBY ORDERED THAT:

3   1.   Plaintiff's motion at ECF No. 41 is construed as a motion for reconsideration of the

4        discovery order at ECF No. 39 and is DENIED; and

5   2.   Plaintiff's motion at ECF No. 50 is construed in part as a motion to strike ECF No. 47

6        and, as such, is DENIED.

7        It is FURTHER RECOMMENDED THAT:

8   1.   Defendant Casey's motion for summary judgment, ECF No. 40, be GRANTED; and

9   2.   Defendant Wong's motion for summary judgment, ECF No. 37, be GRANTED.

10        These findings and recommendations are submitted to the United States District Judge

11   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12   after being served with these findings and recommendations, any party may file written

13   objections with the court and serve a copy on all parties.  Such a document should be captioned

14   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

15   objections shall be filed and served within fourteen days after service of the objections.  The

16   parties are advised that failure to file objections within the specified time may waive the right to

17   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   DATED: November 6, 2023

19

20   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28